IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

THELMA L. KEATON,

      Plaintiff,

vs.                                                   CASE NO. 1:12-cv-46-GRJ

MICHAEL J. ASTRUE,
Commissioner of Social Security

      Defendant.

_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for disability insurance benefits and supplemental security income benefits. (Doc. 1.) The Commissioner has answered (Doc. 9), and both parties have filed briefs outlining their respective positions. (Docs. 12, 13.) The parties have consented to have the undersigned U.S. Magistrate Judge conduct all proceedings in this case. (Docs. 7, 8.) For the reasons discussed below, the Commissioner's decision is **REVERSED AND REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act (the "Act") on September 15, 2009, alleging a disability onset date of April 15, 2009, due to right shoulder impingement. (R. 15, 122, 180-90, 215, 220.) Plaintiff, who was 48 at the time of her alleged onset of disability, has a high school education with some

college and previously worked as a certified nursing assistant and cook. (R. 35.)

Plaintiff's applications were denied initially and upon reconsideration. (R. 15, 108-122.) On April 8, 2011, after an administrative hearing, the Administrative Law Judge ("ALJ") issued a written decision concluding Plaintiff was not disabled and thus was not entitled to a period of disability insurance benefits or to supplemental security income benefits. Plaintiff timely filed a request for review by the Appeals Council, which denied her request on January 25, 2012. (R. 1-4.) This appeal followed.

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole,

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does

---

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive

---

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

---

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

## III. SUMMARY OF RECORD

Plaintiff had right shoulder surgery in July 2008, which stemmed from a work-related injury. Dr. Edward Jaffe performed the surgery and declared Plaintiff at maximum medical improvement in January 2009. At that time, he determined that light duty work restrictions with no overhead lifting and occasional lifting up to 25 pounds from floor to waist were appropriate. (R. 352.)

Dr. Eftim Adhami performed a consultative examination of Plaintiff in November 2009 and opined that Plaintiff may need to avoid heavy lifting and high reaching. (Doc. 389.) State agency consultant Mitchell Lee Levine, M.D., opined in March 2010 that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk for about 6 hours in an 8-hour workday, and sit for 6 hours in a workday. (R. 441-48.)

The record also contains two attorney-supplied forms completed by Claudele Souffrant, M.D., who Plaintiff alleges is a treating physician at the Alachua County Health Department from April 15, 2009 through at least the date of the questionnaires. In her RFC evaluation, Dr. Souffrant opined that Plaintiff could sit 1-2 hours at a time, could stand for up to 30 minutes at a time, and could only sit or stand at will a total of 1 hour per day, 5 days a week. Dr. Souffrant opined that Plaintiff could lift 1-5 pounds frequently and only 1-5 pounds occasionally. She based her answers on Plaintiff's "extreme joint pain." (R. 460-63.) Dr. Souffrant also completed a pain questionnaire opining that Plaintiff reported extreme pain and that this was consistent with the objective findings. (R. 464-69.)

In his April 8, 2011 opinion, the ALJ found that Plaintiff suffered from the severe

impairments of right shoulder, status post surgery; left knee problems; and obesity. (R. 17.) He found that Plaintiff had the residual functional capacity to perform light work, except that she can lift and carry 20 pounds occasionally and ten pounds frequently. The ALJ also noted in the RFC that:

> The claimant can sit, and stand/walk for a total of six hours each during an eight-hour workday, while taking normal breaks. The claimant has unlimited ability to push and pull. The claimant may never climb ladders, ropes or scaffolds, but may frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can perform no overhead lifting, and may occasionally lift up to twenty-five pounds from floor to waist.

(R. 18.) Based on this RFC, the ALJ found that Plaintiff could perform her past relevant work as a short order cook and therefore was not disabled. (R. 21.)

In reaching his decision, the ALJ assigned significant weight to Dr. Jaffe's opinion and some weight to the opinions of Dr. Adhami and Dr. Levine. The ALJ did not mention the opinions of Dr. Souffrant. (R. 21.)

## IV. DISCUSSION

Plaintiff contends that the ALJ committed reversible error by failing to acknowledge or address the opinions of Dr. Souffrant, who she alleges was a treating physician at the Alachua County Health Department.[21] (Doc. 13.) The Commissioner responds that there is no evidence that Dr. Souffrant was directly involved in treating Plaintiff (i.e., no medical treatment records in the record reflect Plaintiff was seen by Dr.

---

[21] Plaintiff's other issue on appeal is whether the ALJ failed to properly assess the limiting effects of Plaintiff's obesity in combination with her arthritic left knee. However, because the Court determines that the Commissioner's decision should be reversed and remanded for further proceedings based on Plaintiff's first claim, there is no need for the Court to address her other claim. Pendley v. Heckler, 767 F. 2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of expert testimony alone warrants reversal' we do not consider the appellant's other claims.").

Souffrant). The Commissioner also contends that even if Dr. Souffrant is a treating physician, the ALJ's failure to address her opinion was harmless because her opinions are inconsistent with the overall evidence. (Doc. 13.)

In evaluating opinion evidence on disability claims, the ALJ "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."[22] A treating physician is a claimant's own physician who provides the claimant with medical treatment or evaluation and has had an ongoing treatment relationship with the claimant.[23] Furthermore, "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary . . . the ALJ must . . . articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."[24]

In the instant case, Dr. Souffrant's "Residual Functional Capacity Evaluation by Treating Physician" and "Clinical Assessment of Pain by Treating Physician" forms were completed on March 18, 2011 (after the hearing but before the ALJ rendered his decision) and were part of the record. Notably, the ALJ did not mention the opinions of Dr. Souffrant anywhere in his written decision. Dr. Souffrant's opinions reflect significantly greater limitations than those determined by the ALJ in his RFC, and could

---

[22] MacGregor v. Bowen, 786 F. 2d 1050, 1053 (11th Cir. 1986); see Wiggins v. Schweiker, 679 F. 2d 1387, 1390 (11th Cir. 1982) (ALJ's failure to mention treating physician and weight, if any, given to the opinion was grounds for reversal); 20 C.F.R. § 404.1527(d)(2).

[23] 20 C.F.R. § 404.1502.

[24] Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted).

potentially have great impact on the ALJ's analysis. The Court cannot determine on this record whether Dr. Souffrant was a treating physician and to say the ALJ's omission of her opinion was harmless would require "re-weighting the evidence and engaging in conjecture that invades the province of the ALJ."[25]

Because the ALJ failed to even mention the opinions of Dr. Souffrant there is no finding of the weight, if any, the ALJ accorded to the opinions of Dr. Souffrant. Assuming the ALJ concludes that Dr. Souffrant is not a treating physician the ALJ can then accord appropriate weight in discounting the opinion. On the other hand, assuming the ALJ concludes that Dr. Souffrant is a treating physician the ALJ must then state the weight accorded to the opinions, and if the opinions are discounted, the ALJ must then articulate reasons for doing so based upon the evidence (or lack thereof) in the record. The ALJ's written decision is silent on these issues and therefore the Court concludes that remand is appropriate for further consideration and explanation by the ALJ.

## V. CONCLUSION

In view of the foregoing, the decision of the Commissioner is **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner so that the Administrative Law Judge may conduct further proceedings consistent with this Order, and fully discuss whether Dr. Souffrant is a treating physician and if so, articulate what weight, if any, should be given to her opinion. The Clerk is directed to enter final

---

[25] Nyberg v. Commissioner, 179 Fed. Appx. 589, 592 (11th Cir. 2006) (unpublished opinion) (remanding where the ALJ failed to consider the opinion of a treating physician where the Commissioner also argued that the source was not a treating physician and even so, the error was harmless).

judgment in favor of the Plaintiff consistent with this Order and to close the file.

**DONE AND ORDERED** this 4th day of January 2013.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge